**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**\* \* \***

UNITED STATES OF AMERICA,

          Plaintiff,

v.

GLENN JAMES HOLTZCLAW, *et al.*,

          Defendants.

2:06-cr-00115-JCM-LRL

**OMNIBUS MOTION TO SUPPRESS**

**REPORT & RECOMMENDATION**

      The defendant, Glenn James Holtzclaw, is awaiting trial on charges of conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846 and 21 U.S.C § 841(a)(1), (b)(1)(A)(viii); two counts of distribution of a controlled substance, and aiding and abetting in same, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii); possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); and possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).  He is also facing three forfeiture allegations pursuant to the provisions of 21 U.S.C. § 853.  (Superseding Indictment (#63).)

      Holtzclaw has filed an Omnibus Motion to Suppress (#33),[1] which addresses the circumstances surrounding his arrest, the search and seizure of his 1995 Mercedes Benz, the nighttime search of his apartment, and the search of a Federal Express package addressed to him.  Holtzclaw contends that his arrest and the subsequent search of his automobile were conducted absent probable cause, that the affidavit in support of the search warrant was insufficient on its face, and that the seizure and search of his Federal Express package was unconstitutional.  Finally, he argues that the good faith exception

---

[1]    When originally filed only a portion of the Motion was downloaded.  A complete image of the Motion is located at Docket Nos. 55 and 56.

to the exclusionary rule does not apply to any of these allegedly unlawful intrusions. The government contends that the arrest, seizures, and searches were all constitutional. Further, it argues that defendants allegations are not supported by the facts of the case.

An evidentiary hearing was held on March 26, 2007. Assistant United States Attorney Peter Levitt appeared for the government and Osvaldo E. Fumo appeared for Holtzclaw. The government called Detective Vincent, Sergeant Long, Detective Hart, Special Agent Tolbert, and Detective Allison as witnesses. The defense called no witnesses.

## THE EVIDENCE

On March 21, 2006 Detective Hart, acting in an undercover capacity, arranged to purchase four ounces of methamphetamine from Christian Burns, Holtzclaw's co-defendant, for $2,800. Detective Hart agreed to meet Burns at the Skyline Casino located at 1741 N. Boulder Highway, Henderson, Nevada. Detective Vincent's unit, and additional narcotics officers, set up surveillance in the Skyline Casino parking lot at or around 6:00 p.m. Witnesses Detective Vincent and Sergeant Long were both part of the surveillance team.

The surveillance units parked to ensure that the entire parking lot was covered, look for counter surveillance, and determine the best place for Detective Hart to park his car so as to provide for his safety. After the vehicles were in position, Detective Hart was called and told where to park. Detective Hart arrived and parked on the far west side of the parking lot, near an exit onto Athol Avenue. Detective Vincent had parked so that he was somewhat isolated and had a clear view of the area in which the buy was to take place. Sergeant Long was parked in an area where only the top of Detective Hart's car was visible. Detective Hart was wearing a body wire so that whatever was said would be transmitted to the surveillance units; meanwhile all the surveillance teams communicated to one another by radio.

Burns arrived as a passenger in a maroon Mitsubishi Sports Utility Vehicle at about 8:00 p.m. The Mitsubishi backed into the parking space next to that of Detective Hart. The surveillance team noticed that a white Ford Excursion, Nevada license plate 197 SGW, followed the Mitsubishi into the

parking lot.  The Ford parked in the space next to that of Detective Vincent.  The Ford's occupants had a clear view of the prospective sale.  The Ford Excursion's windows were tinted, preventing Detective Vincent from seeing the Ford's occupants.  Detective Vincent did not see anyone get out of the vehicle; shortly after the drug sale the Ford followed the Mitsubishi out of the parking lot.

Based on his law enforcement experience Detective Vincent believed that the Ford contained Burn's supplier.  Detective Vincent testified that it is common for a dealer or supplier to be very close to a large drug deal so that he can retrieve the funds immediately after the transaction.  He also testified that it was common for a dealer or supplier to set up counter surveillance.  In the instant case, Detective Vincent drew his conclusion based on the fact that the two cars arrived in tandem, and the Ford parked in such a way as to have a clear view of the drug deal.

After the transaction the Mitsubishi pulled out of the Foster Street exit and headed west.  The Ford followed.  One team was assigned to follow the Mitsubishi, and Sergeant Long's team was to follow the Ford.  When Sergeant Long turned west onto Foster he observed the Mitsubishi parked on the dirt shoulder of the road and the Ford along side it, half on the dirt and half on the road.  Sergeant Long drove by and observed a middle-aged, white male standing by the driver's door of the Ford.  Sergeant Long testified that he got a good look at the individual, despite the fact that Foster is not well-lit.  Sergeant Long testified that the subject turned and looked directly at him, and was thus illuminated in his headlights.  Sergeant Long estimated that the subject was only about thirty feet away when viewed.  Sergeant Long drove past the subjects and made a U-turn in a deserted parking lot at the end of the block.  After the Ford passed, Sergeant Long followed it to Country Club Towers at 850 East Desert Inn Road, Las Vegas, Nevada.

At Country Club Towers the Ford entered a secured parking garage into which the officers could not follow.  The officers waited and entered on foot when another car entered the garage.  John Arnold, a security guard for the apartment building, stopped the officers.  When Mr. Arnold learned the officers' errand, he cooperated with them.  Mr. Arnold informed the officers that Holtzclaw drove the Ford they had followed and an older grey Mercedes Benz 500 class.  The officers noted the license plate number

on the Mercedes: Nevada 351 TKD.  Mr. Arnold also informed the officers that Holtzclaw had a lot of seedy people going up to his apartment at all hours of the day.  Mr. Arnold then took the officers up a back elevator and pointed out Holtclaw's apartment, Penthouse #7.  Also during this time, the officers looked at the directory for the Country Club Towers and found that Holtzclaw's name was listed under Penthouse #7.  The officers concluded their investigation at  Country Club Towers for the evening and met with the officers who tailed the Mitsubishi.

On March 22, 2006, Detective Vincent learned that the Ford Excursion was registered to Proserve Plumbing and that the license holder for that entity was Glenn James Holtzclaw.  Also registered to Holzclaw was the grey Mercedes.  Detective Vincent found that Holtzclaw had prior arrests for trafficking in methamphetamine and had been convicted of possession with intent to sell methamphetamine.  Detective Vincent also ran Holtzclaw through the Department of Motor Vehicles and obtained his photograph.  Detective Vincent showed the photograph to Sergeant Long, who identified the man in the photograph as being the same man he saw in his headlights the night before.  Sergeant Long, in court, also identified the defendant, Holtzclaw, as the man he saw in his headlights.  A report written by Detective Vincent summarizing the events of March 21 and 22 was entered at 4:37 p.m. on March 22, 2007.  The report did not mention that Sergeant Long had identified Holtzclaw from his DMV photo as the man he had seen the night before in his headlights.

Over the period of March 22, 2006 through March 24, 2006, Detective Hart and Burns negotiated the purchase of one pound of methamphetamine.  During the negotiations it became apparent to Detective Hart that Burns was the middle man.  Detective Hart based this conclusion on the fact that Burns did not have the methamphetamine in his possession and that he did not have the authority to set the price.  During phone conversations Burns stated he had to speak to "his guy" before he could agree to a price with Detective Hart.  The two eventually agreed that Detective Hart would pay $9,000 for one pound of methamphetamine.

On March 24, 2006, Detective Hart agreed to meet Burns in the parking lot of the Las Vegas Outlet Center.  Surveillance was set up in the parking lot and Detective Hart was called and told where

4

to park.   At or about 8:40 p.m. Burns arrived in a white Alero.  Trailing him into the parking lot was a grey Mercedes, the same Mercedes that had been linked to Holtzclaw by the apartment security guard and a DMV check of the license plate.   The Alero parked beside Detective Hart's vehicle and the Mercedes continued past the Alero, circled around, and parked where it had a clear view of the drug transaction.   The driver turned off the Mercedes' headlights, but left on its parking lights.   This was an indication to officers that the driver was not going to exit the vehicle.   When Detective Hart received a ziplock baggie of a substance, later confirmed to be methamphetamine, he gave a predetermined arrest signal.   After the signal, Sergeant Long positioned his car so the Mercedes could not get away and arrested Holtzclaw.  During an inventory search of the Mercedes, conducted as part of Henderson Police Department's normal procedure, officers found methamphetamine, cocaine, mushrooms, ecstasy, marijuana, and drug paraphernalia.  A dismantled 12 gauge shotgun was also found in the trunk of the vehicle.

Following these events Special Agent Tolbert swore out a search warrant before U.S. Magistrate Judge Leen on March 25, 2006 at 3:05 a.m.   Finding probable cause, Judge Leen issued a search warrant authorizing the search of 850 East Desert Inn, Penthouse #7.   Judge Leen also found good cause to allow the search to be conducted during the nighttime hours.

On Saturday afternoon, March 25, 2006, Stacy Waller, the manager at Country Club Towers, received a Federal Express package addressed to Holtzclaw.  Ms. Waller learned on Tuesday, March 28, 2006, that Holtzclaw's apartment had been searched by the police.   At that time, she asked a co-worker to call Lieutenant Hatch and inform him that a Federal Express package was in the manager's office waiting to be delivered to Holtzclaw.  On March 29, 2006, Lieutenant Hatch informed Detective Allison that the manager at Holtzclaw's apartment complex had received a Federal Express package addressed to Holtzclaw.   The next day, March 30, 2006, Detective Allison contacted Ms. Waller and took possession of the package at or about 9:15 a.m.  Detective Allison then swore out a search warrant for the package before Justice of the Peace Steven George of the Henderson Justice Court.   After obtaining the search warrant Detective Allison opened the package and discovered $26,200.

1

**DISCUSSION**

2

**I.  The Arrest of the Defendant was Supported by Probable Cause**

3       A warrentless arrest must be based on probable cause.  Probable cause to arrest is present when

4   at the time of arrest, the officer has within his knowledge reasonably trustworthy facts and

5   circumstances sufficient to warrant a reasonably prudent person to believe that the suspect has

6   committed or is committing a crime.  *See Beck v. Ohio*, 379 U.S. 89, 91 (1964).  Thus, a police officer

7   may arrest without a warrant when he has reasonable grounds to believe that a felony has been

8   committed, that the person before him committed it, and the arrest does not occur in the suspect's home.

9   *See United States v. Watson*, 423 U.S. 411, 418 (1976) ("The cases construing the Fourth Amendment

10  thus reflect the ancient common-law rule that a peace officer was permitted to arrest without a warrant

11  . . . for a felony not committed in his presence if there was reasonable ground for making the arrest.").

12      Detectives observed the white Ford Excursion in circumstances that intimated it was somehow

13  connected to Burns' drug transaction.  The Excursion's involvement was confirmed when Sergeant

14  Long witnessed the Excursion and the Mitsubishi pulled off the road together immediately following

15  the drug deal.  Sergeant Long's team followed the Ford to Holtzclaw's residence, where Holtzclaw was

16  identified by Mr. Arnold as the driver of the Ford.  Holtzclaw's alternate vehicle, the Mercedes, was

17  also identified by Mr. Arnold.  DMV records confirmed that both vehicles were registered, directly or

18  indirectly, to Holtzclaw.  When the Mercedes tailed Burns into the parking lot during the second drug

19  buy, far more than suspicion supported the reasonable inference that Holtzclaw was there to observe

20  Burns' drug deal.  During consecutive drug deals, officers observed both of Holtzclaw's vehicles follow

21  Burns and park in such a way as to observe him.  Additionally, the officers knew that Holtzclaw had

22  been convicted of possession with intent to sell methamphetamine.  This evidence supports a

23  determination that the officers had probable cause to arrest Holtzclaw.

24  **II.  The Search of the Mercedes Fell Within the Scope of the Inventory Exception**

25      "[I]nventory procedures serve to protect an owner's property while it is in the custody of the

26  police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from

6

danger." *Colorado v. Bertine*, 479 U.S. 367, 376 (1987). Inventory searches must be sufficiently regulated so as to avoid the possibility that police will use the search as a pretext for broad searches of vehicles and their contents. *See Florida v. Wells*, 495 U.S. 1, 5–6 (1990).

Detective Vincent and Sergeant Long both testified that Holtzclaw was arrested before the inventory search of the Mercedes. Sergeant Long testified that Department Manual § 380[2] governs the inventory search for vehicles that are to be towed by the Henderson Police Department. He further testified that the search was in compliance with that policy. Holtzclaw does not dispute that there is a policy or that it was followed.

## III. The *Franks* Issue

In deciding whether to issue a search warrant, a judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (internal quotations and citation omitted). "The [judge] need not determine that the evidence sought is *in fact* on the premises to be searched . . . or that the evidence is more likely than not to be found where the search takes place. . . . The [judge] need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir. 1987) (citation omitted).

In determining whether a search warrant shall be had, the magistrate judge may rely on the conclusion of experienced law enforcement officers regarding where evidence is likely to be found. *Id.* The magistrate judge also may draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense. *Id.*

An accused may challenge the validity of an affidavit supporting a search warrant by

---

[2] The government did not offer the policy into evidence.

establishing that the affidavit contained a false statement of fact that was made deliberately or with reckless disregard for the truth. *See Franks v. Delaware*, 438 U.S. 154, 170 (1978). The statement must also be necessary to the finding of probable cause. *Id.* at 156. If perjury or reckless disregard is established by the defendant by a preponderance of the evidence, the court must void the search warrant if, after the false material statement is set to one side, the affidavit's remaining content is insufficient to establish probable cause. *Id.*

Holtzclaw challenges the affidavit on two grounds. First, that it does not demonstrate reasonable grounds to believe that his dwelling was the source location of any contraband and fails on its face to establish probable cause to undertake a search of his premises. Second, Holtzclaw argues that the affidavit fails to set forth good cause for the search to be undertaken during the night. Alternatively, he contends that the statements sworn to by Special Agent Tolbert were knowingly and intentionally misleading, if not false.

**A.  The Search Warrant was Based on Sufficient Probable Cause**

Holtzclaw's argument that the search of his residence was not supported by probable cause is premised on his notion that there was no objective evidence that additional quantities of contraband were located at his premises at of the time of his arrest. Holtzclaw argues that the following allegations are insufficient to achieve a link between the objects to be seized and the premises searched: (1) that the Ford Excursion was followed to his residence on a single occasion; (2) that the Ford Excursion was seen parked at his residence on another occasion; and (3) that an unidentified security officer at the residence represented to the officers that Holtzclaw lived there. Holtzclaw's framing of these of the allegations, as well as misstating the facts, fails to consider the circumstances surrounding each discrete event.

A magistrate judge's finding of probable cause may not be reversed unless it is clearly erroneous. *United States v. Dozier*, 844 F.2d 701, 706 (9th Cir. 1988) (citation omitted). Furthermore, as Holtzclaw's own cited case law observes, a warrant is not invalid for failure to produce direct evidence that the items to be seized will be found at a particular location.

*United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993). "[T]he nexus between the objects to be seized and the premises search can be established from the particular circumstances involved and need not rest on direct observation." *United States v. Lockett*, 674 F.2d 843, 846 (11th Cir. 1982) (citation omitted).

Holtzclaw points to several items of direct evidence that he claims are missing in this case, yet necessary, to find that probable cause existed to search his apartment. (*See* Mot. (#55) at 34.) For example, Holtzclaw states that Burns was never seen at, or followed to or from, Holtzclaw's apartment; that no surveillance was ever conducted at the apartment complex; and that the Mercedes and the Ford were not registered to the Country Club Towers address.[3] (*Id.*) This type of direct evidence was not necessary if there was a substantial basis for Judge Leen to conclude that the object of the search may have been located at 850 East Desert Inn Road, Penthouse #7. *See United States v. Alvarez*, 358 F.3d 1194, 1203 (9th Cir. 2004) (finding that when issuing a search warrant a magistrate judge must look to the totality of the circumstances, and any facts submitted must provide a substantial basis for the judge to conclude that the object of the search is probably on the premises to be searched at the time that the warrant is issued).

Here, the affidavit supporting the warrant detailed the investigation into Holtzclaw and Burns and tied Holtzclaw's illegal activities to his residence at 850 East Desert Inn Road, Penthouse #7. (*See* Opp'n (#44) Ex. A at 9–11.) Thus, the court concludes that the totality of the circumstances, *see Illinois v. Gates*, 462 U.S. 213, 230 (1983), indicates probable cause to search Holtzclaw's residence.

**B. Special Agent Tolbert Did Not Deliberately or with Reckless Disregard for the Truth Make False Statements of Fact**

Holtzclaw argues the following six alleged misrepresentations and omissions were made intentionally or with reckless disregard for the truth:

1. Sgt. Long, Lt. Hatch, and Detective Collins followed the Ford Excursion

---

[3] The affidavit did not seek to obtain a warrant to search the residences to which the cars were registered.

9

1   directly to the Country Club Towers, located at 850 E. Desert Inn, Las Vegas, NV.

2           2. On March 22, 2006, Sgt. Long contacted security for the Country Club Towers

3   and learned that Glenn James Holtzclaw lives in the complex and is registered to apartment PH

4   (penthouse ) #7. Sgt. Long also observed the Ford Excursion parked in the secured parking lot.

5   During this interview, Sgt. Long was advised by the security officer that numerous individuals

6   were in and out of the apartment during all hours of day and night.

7           3 and 4. Prior purchases and surveillance of Holtzclaw have taken place after the

8   hours of 10:00 p.m.

9           5. Sgt. Long observed the driver of the Ford Excursion, described as a middle-

10  aged white male adult (who has been identified as Glenn Holtzclaw) . . . .

11          6. Failure to disclose that the vehicle operated by Holtzclaw on March 24, 2006

12  was not the same vehicle used by Holtzclaw on March 21, 2006, was not registered to the

13  Country Club Tower address, and had never been observed at or even near the Country Club

14  Towers.

15      (Mot. (#33) 16–24.)

16      Of these six items, all but three and four are immaterial or not misleading in light of the

17  evidence.   Some of these statements do contain minor inaccuracies, however, they are not

18  material to a finding of probable cause.  Number 1 is simply a misstatement concerning Lt.

19  Hatch.  Lt. Hatch was on the surveillance team that followed the Mitsubishi, not the Ford.  It

20  was established through testimony that Sergeant Long and Detective Collins followed

21  Holtzclaw directly to the Country Club Towers.

22      Number two contains the incorrect date.  If the correct date was written, that is March

23  21, 2006, and the affidavit included the fact that the interview with the security officer took

24  place at night, this information would have benefitted the government.

25      Number five was established as factually accurate through testimony and a supplement

26  police report entered on January, 2006.  (*See supra*, Evidence.)  Number six contains a

10

misstatement of the evidence.  The Mercedes driven by Holtzclaw was observed at the County Club Towers and, in fact, was pointed out to officers by the nighttime security guard, Mr. Arnold.  The same Mercedes that was parked at Country Club Towers, and registered to Holtzclaw, arrived and parked in a position where the drug deal on March 24, 2006 could be observed.  The buttressing of these facts in the affidavit would have helped the government and therefore, cannot be found to be deliberately false.  Thus, the court sees no contradiction or deliberate falsity in the information given in this respect.

### 1.  The Statements Supporting Good Cause to Conduct a Nighttime Search were Inaccurate

A warrant issued upon written affidavit need not reflect the direct personal observations of the affiant and may be based upon hearsay information, provided the magistrate judge is aware of the some of the circumstances underlying the affiant's statements.  *See United States v. Bridges*, 344 F.3d 1010, 1015 (2003).  Special Agent Tolbert relied on information given to him by many different individuals involved in the Holtzclaw investigation.  (Affidavit, Government's Ex. 1 ¶ 8.)

The testimony of Special Agent Tolbert indicates that the search warrant affidavits were, in fact, inaccurate to a certain degree regarding the nighttime drug activities.  It is unknown where the information regarding an unknown male with access to the property was gleaned.  Additionally, at the time of the affidavit Holtzclaw was the only party listed on the directory for Penthouse #7, but there was no evidence he was the only lease holder.  The statement that prior purchases and surveillance of Holtzclaw had taken place after the hour of 10:00 p.m. is a stretch.  None of the drug purchases set up by Detective Burns took place after the hour of 10:00 p.m.  Instead, this statement appears to have been inferred from Mr. Arnold's observation that there were all types of seedy people going in and out of Holtzclaw's Penthouse at all hours.  And, that on March 21, 2006, Sergeant Long's investigation at Holtzclaw's premises may have lasted until after 10:00 p.m.  These facts could and should have been articulated more carefully and accurately in the affidavit.

1  The court finds, however, that the statements were at most the product of carelessness,

2  not deliberate or reckless disregard for the truth.  Moreover, these facts are not relevant to a

3  probable cause determination.  Hence, the warrant is valid.

4  **IV.  The Seizure and Subsequent Search of the Federal Express Package was Constitutional**

5  Defendant argues that the seizure of the Federal Express package by Detective Allision was not

6  supported by reasonable suspicion and therefore was improper.  Holtzclaw concedes, however, that a

7  temporary detention of mail for investigative purposes does not violate the Fourth Amendment where

8  such detention is based upon a reasonable suspicion of criminal activity.

9  In the current case the package was undelivered to Holtzclaw and in the custody of the manager

10  of Country Club Towers.  At the time Detective Allison took possession of the package he had a

11  reasonable, articulable suspicion, premised on objective facts, that the package contained contraband.

12  He knew that Holtzclaw possessed five different narcotics at the time of his arrest; that the search of

13  his residence revealed additional methamphetamine, mushrooms, a digital scale, and firearms; and that

14  Holtzclaw's penthouse contained "a large number of unused FedEx shipping boxes, packaging tape and

15  bubble wrap." (*See* Opp'n (#44) 20–22.).  Through training and experience Detective Allison knew that

16  a person who sells illegal narcotics often utilizes private shipping companies, such as Federal Express,

17  as a method of conveyance to distribute his illegal drugs, as well as to receive payment or proceeds for

18  that contraband. (*See id.* at 22.)  Analyzing all of these factors, the court concludes that the seizure was

19  based upon a reasonable suspicion of criminal activity.  Hence, Detective Allison was permitted to

20  detain the package for a reasonable time pending the issuance of a search warrant.  *See United States*

21  *v. Van Leeuwan*, 397 U.S. 249 (1970); *United States v. Hernandez*, 313 F.3d 1206, 1210 (9th Cir. 2002)

22  (package may be detained to conduct an investigation if investigators have a reasonable and articulable

23  suspicion that it contains contraband or evidence of illegal activity).

24  Holtzclaw also argues that the affidavit in support of the search warrant for the package does

25  not rise to the level of probable cause.  He argues that Detective Allison's affidavit does not explain

26  with particularity how his training and experience led him to deduce that an "otherwise innocuous"

Federal Express package contained contraband, criminal proceeds, or evidence of illegal activity. Although this one factor may be amenable to innocent explanation, in light of Detective Allison's experience, and under the totality of the circumstances, the court finds that the totality of the circumstances easily supports a showing of probable cause. *See Illinois v. Gates*, 462 U.S. 213, 230 (1983).

**V.  The Good Faith Exception Applies to the Deficiencies Regarding the Nighttime Search**

Even if the warrant were defective, the results of the search conducted pursuant to that warrant need not be suppressed because of the good faith exception articulated in *United States v. Leon*, 468 U.S. 897, 908 (1984) ("[W]hen law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system.").  "The good faith exception applies and suppression is unwarranted, unless the searching officers' reliance on the warrant was not objectively reasonable, the magistrate judge wholly abandoned her judicial role, or the officers acted in bad faith by misleading the magistrate judge." *United States v. Huggins*, 299 F.3d 1039, 1044 (9th Cir. 2002) (internal citations omitted).  As discussed *supra*, Part III.B.1, although the statements in the affidavit regarding the nighttime search should have been more precise, there is no indication in the record that Special Agent Tolbert acted in bad faith or that he intended to mislead Judge Leen.  Therefore, the good faith exception applies.

<b>RECOMMENDATION</b>

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that defendant Holtzclaw's Omnibus Motion to Suppress (#33) should be denied.

DATED this 23rd day of April, 2007.

**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**